Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order

United States Courts
Southern District of Texas
FILED

*May 20, 2021*

Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO.** |
| | § | |
| **LEIDY ARELI HERNANDEZ LOPEZ,** | § | |
| **OCTAVIAN OCASIO, AND** | § | **4:21cr272** |
| **EMMANUEL PADILLA REYES A/K/A** | § | |
| **CHRISTIAN HERNANDEZ BONILLA** | § | **UNDER SEAL** |

**INDICTMENT**

THE GRAND JURY CHARGES:

**COUNT ONE**
(Conspiracy 18 U.S.C. § 1349)

**INTRODUCTION**

At all times material to this Indictment:

1.      The defendant **LEIDY ARELI HERNANDEZ LOPEZ**, (**"LOPEZ"**),

along with at least one co-conspirator (AB), resided in the Southern District of

Texas.  The defendant **OCTAVIAN OCASIO (OCASIO)** resided in New York.

It is not known where defendant **EMMANUEL PADILLA REYES A/K/A**

**CHRISTIAN HERNANDEZ BONILLA (REYES/BONILLA)** resided.

2.      **DEFENDANTS** engaged in a scheme to use fictitious car dealerships to

issue and sell hundreds of thousands of Texas temporary buyer tags ("buyer tags")

without selling cars.  **DEFENDANTS** used email accounts such as Gmail to

communicate with each other and to deliver fraudulently obtained Texas buyer tags

to purchasers all over the United States.  The illegal tags pose a danger to the

public and to law enforcement because purchasers use them to avoid obtaining

registration, safety inspections, and liability insurance, and can use them to hide

their identity from law enforcement.

3.      A Vehicle Identification Number (VIN) is the identifying code for a specific

automobile.  A VIN is like a fingerprint as no two vehicles in operation have the

same VIN.

4.      In Texas, used car dealers, whether they are individuals or business entities,

must have an independent General Distinguishing Number (GDN) license to buy,

sell, or exchange used vehicles.

5.      To obtain a GDN license, applicants must access the Texas Department of

Motor Vehicles' (TxDMV) online eLicensing application portal where they answer

questions on an application, sign a certification that their answers are truthful, pay

a fee, and provide proof of a surety bond (for buyer complaints only), office space,

adequate signage, and identity.  Acceptable identification includes a copy of a

current state issued driver license (from any state), Texas identification card,

United States passport, United States Armed Forces identification, or Texas

concealed handgun license.

6.     The TxDMV's online eLicensing platform for GDN applications is maintained on computer servers that are located outside the state of Texas.

7.     Once an applicant obtains a GDN license, they can buy, sell, or exchange used cars and create temporary buyer tags for the transaction through the TxDMV's online eTag portal that is known as "webDealer."  The portal is web-based and is accessed by licensed GDN holders and is password protected.  A temporary buyer tag, commonly referred to as a "paper plate" or "temporary tag," is only authorized when there is a vehicle sale and can only be created by a licensed GDN holder using their password to access the webDealer portal and manually enter the vehicle and buyer information, including the VIN.  The dealer is responsible for ensuring that vehicles are inspected within 180 days of sale. There is no restriction on the vehicle, buyer, or VIN information that can be input into webDealer.  The GDN holder can allow others access to webDealer by sharing their password or by creating additional users on their account.

8.     Within 30 days of the active date of the GDN license (not when the dealer is open for business or starts selling vehicles), the GDN licensee is required to notify both the county tax office and appraisal district where the dealership is located that the licensee is a new dealer and to set up a tax account.  Dealers are required to file a Motor Vehicle Inventory Tax Statement (VIT) at both the county tax office and

3

appraisal district where the dealership is located.  If no sales are made, the dealer must still file the form reporting zero sales.

9.    Texas Motor Company was a fraudulent and fictitious used car dealer that **REYES/BONILLA** opened using the identity and social security number of someone other than himself.  During the time Texas Motor Company held a GDN license from approximately July 2019 until it was shut down by the TxDMV in December 2020, more than 430,000 Texas buyer tags were issued from its webDealer account.  No VIT records were filed for Texas Motor Company.

10.    L.C.S. Auto Sales was a fraudulent and fictitious used car dealer that had a GDN license.   During the time L.C.S. Auto Sales held a GDN license from approximately February 2020 until it was shut down by the TxDMV in July 2020, more than 18,000 Texas buyer tags were issued from its webDealer account.  No VIT records were filed for L.C.S. Auto Sales.

11.    McKenna of Houston LLC was a fraudulent and fictitious used car dealer that held a GDN license.  During the time McKenna of Houston LLC held a GDN license from approximately June 2020 until it was shut down by the TxDMV in September 2020, more than 28,900 Texas buyer tags were issued from its webDealer account.  No VIT records were filed for McKenna of Houston.

12.    Best Auto Motor LLC was a fraudulent and fictitious used car dealer that **LOPEZ** opened.  During the time Best Auto Motor LLC held a GDN license from

approximately May 2020 until it was shut down by the TxDMV in July 2020, more

than 108,000 Texas buyer tags were issued from its webDealer account.  No VIT

records were filed for Best Auto Motor LLC.

## THE CONSPIRACY

13.    From at least in or about July 2019 through in or about January 2021, in the

Houston Division of the Southern District of Texas and elsewhere, the defendants,

**LEIDY ARELI HERNANDEZ LOPEZ,**
**OCTAVIAN OCASIO, AND**
**EMMANUEL PADILLA REYES A/K/A**
**CHRISTIAN HERNANDEZ BONILLA**

did knowingly combine, conspire, confederate, and agree with others known and

unknown to the Grand Jury, to commit the following offense against the United

States:

> To devise and intend to devise a scheme and artifice to defraud and to obtain
> money and property by means of materially false and fraudulent pretenses,
> representations, and promises, and for the purpose of executing said scheme
> and artifice to defraud, transmit (or cause to be transmitted) by means of
> wire and radio communication in interstate commerce, a write, sign, signal,
> picture, and sound in violation of Title 18, United States Code, Section
> 1343.

## MANNER AND MEANS OF THE CONSPIRACY

14.    Defendants **LOPEZ**, **OCASIO**, and **REYES/BONILLA** along with co-

conspirators known and unknown to the grand jury, sought to accomplish the

purpose of the conspiracy by the following manner and means, among other things:

a. Defendants and their co-conspirators provided false information to the Texas Department of Motor Vehicles such as false identities and copies of fraudulent driver's licenses, fake lease agreements, photos of fake office space and business signs, and other fraudulent documents via the Texas Department of Motor Vehicles' online eLicensing application portal in order to obtain GDN licenses for fictitious car dealerships;

c. Defendants and their co-conspirators advertised the sale of Texas buyer tags on social media platforms like Facebook and Instagram;

d. Defendants and their co-conspirators used email to communicate with each other and to deliver fraudulently obtained Texas buyer tags;

e. Defendants and their co-conspirators received and shared fraud proceeds from the fraudulent sale of Texas buyer tags via electronic payment services like Cash App and Zelle.

**ACTS IN FURTHERANCE OF THE CONSPIRACY**

15.     To achieve the purpose of the conspiracy, the defendants and at least one co-conspirator, in the Southern District of Texas and elsewhere, committed and caused to be committed the following acts in furtherance of the conspiracy:

(1)     On or about July 8, 2019, **REYES/BONILLA** obtained a GDN dealer license for a shell company called Texas Motor Company using the identity, social

security number, and personal identifying information of someone other than himself.

(2)     On or about April 23, 2020, **LOPEZ** sent, or caused to be sent, an email to co-conspirator AB attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "5406." The seller was listed as L.C.S. Auto Sales and issued to a buyer whose initials are "JK" with a zip code in Queens, NY.

(3)     On or about April 23, 2020, co-conspirator AB forwarded **LOPEZ**' email containing the PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "5406" to **OCASIO**.

(4)     On or about April 23, 2020, **OCASIO** received an email from Cash App advising that he had received a $175 payment from "JK" for "temporary plates for bmw 2010 528i for JXXXX." TxDMV records show that this buyer tag was issued via L.C.S. Auto Sales from the TxDMV eTag system. The car was never inspected in Texas.

(5)     On or about May 2, 2020, **LOPEZ** sent, or caused to be sent, an email to co-conspirator AB attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in 6425. The seller was listed as L.C.S. Auto Sales issued to a buyer whose initials are "JG" with an address in Florida.

(6)     On or about May 2, 2020, co-conspirator AB forwarded **LOPEZ**' email containing the PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "6425" to **OCASIO**.

(7)     On or about May 2, 2020, **OCASIO** received an email from Cash App advising that he had received a $175 payment from "JG" for "temp tag." TxDMV records show that this buyer tag was issued via L.C.S. Auto Sales from the TxDMV eTag system.  The car was never inspected in Texas.

(8)     On or about May 12, 2020, **LOPEZ** sent, or caused to be sent, an email to co-conspirator AB attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "1171"  The seller was listed as L.C.S. Auto Sales issued to a buyer whose initials are "TB" with an address in New York.

(9)     On or about May 12, 2020, co-conspirator AB forwarded **LOPEZ**' email containing the PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "1171" to **OCASIO**.  TxDMV records confirm that this buyer tag was issued via L.C.S. Auto Sales from the TxDMV eTag system.

(10)     On or about May 12, 2020, **OCASIO** received an email from Cash App advising that he had received a $175 payment from "TB" for "Registration and Tags."   The car was never inspected in Texas.

(11)   On or about May 13, 2020, **LOPEZ** obtained a GDN license for a fictitious dealership called Best Auto Motor LLC that was purportedly in Harris County, Texas.

(12)   On or about June 9, 2020, **LOPEZ** sent, or caused to be sent, an email to co-conspirator AB attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "7134"  The seller was listed as L.C.S. Auto Sales issued to a buyer whose initials are "JA" with an address in Washington, D.C.  TxDMV records confirm that this buyer tag was issued via L.C.S. Auto Sales from the TxDMV eTag system.

(13)   On or about June 9, 2020, co-conspirator AB forwarded or caused to be forwarded **LOPEZ**' email containing the PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "7134" to **OCASIO**.

(14)   On or about June 9, 2020, **OCASIO** received an email from Cash App advising that he had received a $150 payment from "JA" for "tag."  The car was never inspected in Texas.  L.C.S. Auto Sales never reported a car sale on a VIT.

(15)   On or about June 10, 2020, co-conspirator AB sent, or caused to be sent, an email to **OCASIO** attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "7700."  The seller was listed as McKenna of Houston LLC issued to a buyer whose initials are "QJ"

9

with an address in New York.  TxDMV records confirm that this buyer tag was issued via McKenna of Houston LLC from the TxDMV eTag system.

(16)   On or about June 10, 2020, **OCASIO** received an email from Cash App advising that he had received a $150 payment from "QJ" for "car plates."  The car was never inspected in Texas.  McKenna of Houston LLC never reported a car sale on a VIT.

(17)   On or about August 24, 2020, co-conspirator AB sent, or caused to be sent, an email to **OCASIO** attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "5186."  The seller was listed as McKenna of Houston LLC issued to a buyer whose initials are "YC" with an address in New York.  TxDMV records confirm that this buyer tag was issued via McKenna of Houston LLC from the TxDMV eTag system.

(18)   On or about August 24, 2020, **OCASIO** received an email from Cash App advising that he had received a $150 payment from "YC" for "yves temp tags." The car was never inspected in Texas.  McKenna of Houston LLC never reported a car sale on a VIT.

(19)   On or about September 23, 2020, co-conspirator AB sent, or caused to be sent, an email to **OCASIO** attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "4059."  The seller was listed as Texas Motor Company issued to a buyer whose initials are "JS" with

an address in New York.  TxDMV records confirm that this buyer tag was issued

through Texas Motor Company from the TxDMV eTag system.

(20)   On or about September 23, 2020, **OCASIO** received an email from

Cash App advising that he had received a $175 payment from "JS" for "Temp

License Plates service."  The car was never inspected in Texas.  Texas Motor

Company never reported a car sale on a VIT.

(21)   On or about September 30, 2020, **OCASIO** received an email from

Cash App advising that he had received a $175 payment from a buyer whose

initials are "CJ" for "2000 Nissan maxima se."

(22)   On or about September 30, 2020, co-conspirator AB sent, or caused to

be sent, an email to **OCASIO** attaching a PDF of a Texas buyer's tag along with

the buyer and dealer receipts for a vehicle with a VIN ending in "2552."  The seller

was listed as Texas Motor Company issued to a buyer whose initials are "CJ" with

an address in New York.  TxDMV records confirm that this buyer tag was issued

through Texas Motor Company from the TxDMV eTag system.  The car was never

inspected in Texas.  Texas Motor Company never reported a car sale on a VIT.

(23)   On or about October 4, 2020, **OCASIO** received an email from Cash

App advising that he had received a $125 payment from "AL" for "TXXXX

XXXXXX 2XXX Bat XXXXXXX st Brooklyn ny 11229."

(24)   On or about October 5, 2020, co-conspirator AB sent, or caused to be sent, an email to **OCASIO** attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "4283." The seller was listed as Texas Motor Company issued to a buyer whose initials are "TM" with an address in New York. Texas Motor Company never reported a car sale for VIN 4283.

In violation of Title 18, United States Code, Sections 1349 and 2.

## COUNTS TWO – FIFTEEN
(Wire Fraud 18 U.S.C. § 1343)

## INTRODUCTION

16.    Paragraphs 1 – 15, with all sub-parts, of Count One of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

## THE SCHEME TO DEFRAUD

17.    From at least in or around July 2019 to in or around January 2021, in the Southern District of Texas and elsewhere, the defendants,

**LEIDY ARELI HERNANDEZ LOPEZ,
OCTAVIAN OCASIO, AND
EMMANUEL PADILLA REYES A/K/A
CHRISTIAN HERNANDEZ BONILLA**

did knowingly devise and intend to devise, a scheme to defraud, and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises.

**MANNER AND MEANS OF THE SCHEME**

18.     Paragraph 14 of this Indictment is re-alleged and incorporated by reference

herein as a description of the manner and means of the scheme to defraud.

**EXECUTION OF THE SCHEME**

19.     On or about the dates specified below, within the Houston Division of the

Southern District of Texas and elsewhere, the defendant, for the purpose of

executing the aforesaid scheme to defraud, and attempting to do so, did knowingly

transmit and caused to be transmitted, by means of wire communications in

interstate and foreign commerce, certain writings, signs, signals, pictures, and

sounds, as more particularly described below:

| COUNT | DEFENDANT | DATE | DESCRIPTION |
|---|---|---|---|
| 2 | REYES/BONILLA | July 8, 2019 | Entered false identity, social security number, and other false information on TxDMV online eLicensing application portal |
| 3 | LOPEZ, OCASIO | April 23, 2020 | Emailed fraudulently obtained Texas buyer tags via Gmail |
| 4 | LOPEZ, OCASIO | April 23, 2020 | Emailed fraudulently obtained Texas buyer tags via Gmail |
| 5 & 6 | LOPEZ, OCASIO | May 2, 2020 | Emailed fraudulently obtained Texas buyer tags via Gmail |
| 7 & 8 | LOPEZ, OCASIO | May 12, 2020 | Emailed fraudulently obtained Texas buyer |

| | | | tags via Gmail |
|---|---|---|---|
| 9 & 10 | LOPEZ, OCASIO | June 9, 2020 | Emailed fraudulently obtained Texas buyer tags via Gmail |
| 11 | OCASIO | June 10, 2020 | Emailed fraudulently obtained Texas buyer tags via Gmail |
| 12 | OCASIO | August 24, 2020 | Emailed fraudulently obtained Texas buyer tags via Gmail |
| 13 | OCASIO, REYES | September 23, 2020 | Emailed fraudulently obtained Texas buyer tags from Texas Motor Company via Gmail |
| 14 | REYES/BONILLA, OCASIO | September 30, 2020 | Emailed fraudulently obtained Texas buyer tags from Texas Motor Company via Gmail |
| 15 | REYES/BONILLA, OCASIO | October 5, 2020 | Emailed fraudulently obtained Texas buyer tags from Texas Motor Company via Gmail |

In violation of Title 18, United States Code, Sections 1343 and 2.

## **NOTICE OF CRIMINAL FORFEITURE**
28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C)

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18,

United States Code, Section 981(a)(1)(C), the United States gives notice to the

defendants,

**LEIDY ARELI HERNANDEZ LOPEZ,
OCTAVIAN OCASIO, AND
EMMANUEL PADILLA REYES A/K/A
CHRISTIAN HERNANDEZ BONILLA**

14

that in the event of conviction of the offenses charged in Counts 1 through 15 of

this Indictment, the United States intends to seek forfeiture of all property, real or

personal, which constitutes or is derived from proceeds traceable to such offenses.

### Money Judgment and Substitute Assets

The United States will seek the imposition of a money judgment against

each defendant.  In the event that a condition listed in Title 21, United States Code,

Section 853(p) exists, the United States may seek to forfeit any other property of

the defendants in substitution.


A TRUE BILL:


**Original Signature on File**

_____
FOREPERSON OF THE GRAND JURY


JENNIFER B. LOWERY
Acting United States Attorney


By:  _Belinda Beek_____
       Belinda Beek
       Assistant United States Attorney