IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CRIMINAL NO 4:21-cr-0272-3 |
| EMMANUEL PADILLA REYES A/K/A CHRISTIAN HERNANDEZ BONILLA A/K/A NOEL RIVERA | § § § § | |

## SECOND SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### COUNT ONE
(Conspiracy 18 U.S.C. §§ 1349 and 2)

**INTRODUCTION**

At all times material to this Second Superseding Indictment:

1. Defendant **EMMANUEL PADILLA REYES A/K/A CHRISTIAN HERNANDEZ BONILLA A/K/A NOEL RIVERA(REYES)** and known and unknown co-conspirators resided in the Southern District of Texas and elsewhere.

2. Defendant **REYES**, along with co-conspirators, engaged in a scheme to use fictitious car dealerships to issue and sell hundreds of thousands of Texas temporary buyer tags ("buyer tags") without selling cars. Defendant **REYES** and co-conspirators used accounts such as Gmail and iMessage to communicate with each other and to deliver fraudulently obtained Texas buyer tags to purchasers all over the United States. The illegal tags pose a danger to the public and to law

1

enforcement because purchasers use them to avoid obtaining registration, safety inspections, and liability insurance, and can use them to hide their identity from law enforcement.

3. A Vehicle Identification Number (VIN) is the identifying code for a specific automobile. A VIN is like a fingerprint as no two vehicles in operation have the same VIN.

4. In Texas, used car dealers, whether they are individuals or business entities, must have an independent General Distinguishing Number (GDN) license to buy, sell, or exchange used vehicles.

5. To obtain a GDN license, applicants must access the Texas Department of Motor Vehicles' (TxDMV) online eLicensing application portal where they answer questions on an application, sign a certification that their answers are truthful, pay a fee, and provide proof of a surety bond (for buyer complaints only), office space, adequate signage, and identity. Acceptable identification includes a copy of a current state issued driver license (from any state), Texas identification card, United States passport, United States Armed Forces identification, or Texas concealed handgun license.

6. The TxDMV's online eLicensing platform for GDN applications is maintained on computer servers that are located outside the state of Texas.

7. Once an applicant obtains a GDN license, they can buy, sell, or exchange used cars and create temporary buyer tags for the transaction through the TxDMV's online eTag portal that is known as "webDealer." The portal is web-based and is accessed by licensed GDN holders and is password protected. A temporary buyer tag, commonly referred to as a "paper plate" or "temporary tag," is only authorized when there is a vehicle sale and can only be created by a licensed GDN holder using their password to access the webDealer portal and manually enter the vehicle and buyer information, including the VIN. The dealer is responsible for ensuring that vehicles are inspected within 180 days of sale. There is no restriction on the vehicle, buyer, or VIN information that can be input into webDealer. The GDN holder can allow others access to webDealer by sharing their password or by creating additional users on their account.

8. Within 30 days of the active date of the GDN license (not when the dealer is open for business or starts selling vehicles), the GDN licensee is required to notify both the county tax office and appraisal district where the dealership is located that the licensee is a new dealer and to set up a tax account. Dealers are required to file a Motor Vehicle Inventory Tax Statement (VIT) at both the county tax office and appraisal district where the dealership is located. If no sales are made, the dealer must still file the form reporting zero sales.

9. King's Ranch Autoland was a fraudulent and fictitious used car dealer that Defendant **REYES** opened using a fake Florida driver's license and the identity "Noel Rivera." During the time King's Ranch Autoland held a GDN license from approximately April 2018 until it was shut down by the Tx DMV in March 2020, more than 120,000 Texas buyer tags were issued from its TxDMV account. No VIT records were filed for King's Ranch Autoland.

10. Texas Motor Company was a fraudulent and fictitious used car dealer that Defendant **REYES** opened using the identity and social security number of someone other than himself. During the time Texas Motor Company held a GDN license from approximately July 2019 until it was shut down by the TxDMV in December 2020, more than 430,000 Texas buyer tags were issued from its webDealer account. No VIT records were filed for Texas Motor Company.

## THE CONSPIRACY

11. From at least in or about April 2018 through in or about May 2021, in the Houston Division of the Southern District of Texas and elsewhere, the defendant,

**EMMANUEL PADILLA REYES A/K/A
CHRISTIAN HERNANDEZ BONILLA,
A/K/A NOEL RIVERA**

did knowingly combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit the following offense against the United States:

To devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing said scheme and artifice to defraud, transmit (or cause to be transmitted) by means of wire and radio communication in interstate commerce, a write, sign, signal, picture, and sound in violation of Title 18, United States Code, Section 1343.

## **MANNER AND MEANS OF THE CONSPIRACY**

12. Defendant **REYES,** along with co-conspirators known and unknown to the grand jury, sought to accomplish the purpose of the conspiracy by the following manner and means, among other things:

    a. Defendant and co-conspirators provided false information to the Texas Department of Motor Vehicles such as false identities and copies of fraudulent driver's licenses, fake lease agreements, photos of fake office space and business signs, and other fraudulent documents via the Texas Department of Motor Vehicles' online eLicensing application portal in order to obtain GDN licenses for fictitious car dealerships;

    b. Defendant and co-conspirators advertised the sale of Texas buyer tags on social media platforms like Facebook and Instagram;

    c. Defendant and co-conspirators used email and iMessage to communicate with each other and to deliver fraudulently obtained Texas buyer tags;

d. Defendants and co-conspirators received and shared fraud proceeds from the fraudulent sale of Texas buyer tags via electronic payment services like Cash App and Zelle, and sometimes by cash.

**ACTS IN FURTHERANCE OF THE CONSPIRACY**

13. To achieve the purpose of the conspiracy, the defendant and co-conspirators, in the Southern District of Texas and elsewhere, committed and caused to be committed the following acts in furtherance of the conspiracy:

(1) On or about April 18, 2018, defendant **REYES** obtained a GDN dealer license for a shell company called King's Ranch Autoland using the name "Noel Rivera" and a fraudulent Florida driver's license.

(2) On or about March 18, 2019, co-conspirator DT sent, or caused to be sent, an iMessage to co-conspirator LO attaching a PDF of a Texas buyer's tag issued from seller King's Ranch Autoland for a vehicle with a VIN ending in "0285" to a buyer whose initials are "DP" in Manor, Texas. TxDMV records confirm that this buyer tag was issued via King's Ranch Autoland from the TxDMV eTag system. King's Ranch Autoland never reported a car sale on a VIT.

(3) On or about March 24, 2019, co-conspirator DT sent, or caused to be sent, an iMessage to co-conspirator LO attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "1424." The seller was listed as King's Ranch Autoland issued to a buyer whose initials are

"YB" in Fplugerville [sic], Texas. TxDMV records confirm that this buyer tag was issued from the King's Ranch Autoland account from the TxDMV eTag system. King's Ranch Autoland never reported a car sale on a VIT.

(4) On or about April 3, 2019, co-conspirator DT sent, or caused to be sent, an iMessage to co-conspirator LO attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "0073." The seller was listed as King's Ranch Autoland issued to a buyer whose initials are "HM" in Del Valle, Texas. TxDMV records confirm that this buyer tag was issued from the King's Ranch Autoland account from the TxDMV eTag system. King's Ranch Autoland never reported a car sale on a VIT.

(5) On or about April 5, 2019, co-conspirator DT sent, or caused to be sent, an iMessage to co-conspirator LO attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "9878." The seller was listed as King's Ranch Autoland issued to a buyer whose initials are "KM" in Killeen, Texas. TxDMV records confirm that this buyer tag was issued from the King's Ranch Autoland from the TxDMV eTag system. King's Ranch Autoland never reported a car sale on a VIT.

(6) On or about May 15, 2019, co-conspirator DT sent, or caused to be sent, an iMessage to co-conspirator LO attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "1318."

The seller was listed as King's Ranch Autoland issued to a buyer whose initials are "JM" in Killeen, Texas. TxDMV records confirm that this buyer tag was issued from the King's Ranch Autoland account from the TxDMV eTag system. King's Ranch Autoland never reported a car sale on a VIT.

(7) On or about May 15, 2019, co-conspirator DT sent, or caused to be sent, an iMessage to co-conspirator LO attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "0651." The seller was listed as King's Ranch Autoland issued to a buyer whose initials are "HM" in Del Valle, Texas. TxDMV records confirm that this buyer tag was issued from the King's Ranch Autoland account from the TxDMV eTag system. King's Ranch Autoland never reported a car sale on a VIT.

(8) On or about July 8, 2019, defendant **REYES** obtained a GDN dealer license for a shell company called Texas Motor Company using the identity, social security number, and personal identifying information of someone other than himself.

(9) On or about April 18, 2020, defendant **REYES** received a Cash App payment from a co-conspirator with the subject line "5 plates."

(10) On or about April 18, 2020, defendant **REYES** received a Cash App payment from a co-conspirator with the subject line "for tag."

(11) On or about June 12, 2020, defendant **REYES** received a Cash App payment from a co-conspirator with the subject line "tag."

(12) On or about July 23, 2020, defendant **REYES** received a Cash App payment from a co-conspirator with the subject line "can I have a tag."

(13) On or about September 23, 2020, co-conspirator AB sent, or caused to be sent, an email to co-conspirator OO attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "4059." The seller was listed as Texas Motor Company issued to a buyer whose initials are "JS" with an address in New York. TxDMV records confirm that this buyer tag was issued through Texas Motor Company from the TxDMV eTag system. The car was never inspected in Texas. Texas Motor Company never reported a car sale on a VIT.

(14) On or about September 30, 2020, co-conspirator AB sent, or caused to be sent, an email to co-conspirator OO attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "2552." The seller was listed as Texas Motor Company issued to a buyer whose initials are "CJ" with an address in New York. TxDMV records confirm that this buyer tag was issued through Texas Motor Company from the TxDMV eTag system. The car was never inspected in Texas. Texas Motor Company never reported a car sale on a VIT.

(15) On or about October 5, 2020, co-conspirator AB sent, or caused to be sent, an email to co-conspirator OO attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "4283." The seller was listed as Texas Motor Company issued to a buyer whose initials are "TM" with an address in New York. The car was never inspected in Texas. Texas Motor Company never reported a car sale on a VIT.

(16) On or about April 19, 2021, defendant **REYES** received a Cash App payment from a co-conspirator with the subject line "temp plates."

(17) On or about April 24, 2021, defendant **REYES** received a Cash App payment from a co-conspirator with the subject line "temp tag."

(18) On or about April 27, 2021, defendant **REYES** received a Cash App payment from a co-conspirator with the subject line "temporary license plates."

(19) On or about May 17, 2021, defendant **REYES** received a Cash App payment from a co-conspirator with the subject line "placas."

(20) On or about May 24, 2021, defendant **REYES** received a Cash App payment from a co-conspirator with the subject line "tag for Gary Cadillac."

(21) On or about May 30, 2021, defendant **REYES** received a Cash App payment from a co-conspirator with the subject line "temp tag."

In violation of Title 18, United States Code, Sections 1349 and 2.

# COUNTS TWO – ELEVEN
(Wire Fraud 18 U.S.C. §§ 1343 and 2)

## INTRODUCTION

14. Paragraphs 1 – 13 of Count One of this Second Superseding Indictment, with all subparts, are re-alleged and incorporated by reference as though fully set forth herein.

## THE SCHEME TO DEFRAUD

15. From at least in or around April 2018 to in or around May 2021, in the Southern District of Texas and elsewhere, the defendant

**EMMANUEL PADILLA REYES A/K/A
CHRISTIAN HERNANDEZ BONILLA,
A/K/A NOEL RIVERA**

did knowingly devise and intend to devise, a scheme to defraud, and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS OF THE SCHEME

16. Paragraph 12 of this Second Superseding Indictment is re-alleged and incorporated by reference herein as a description of the manner and means of the scheme to defraud.

## EXECUTION OF THE SCHEME

17. On or about the dates specified below, within the Houston Division of the Southern District of Texas and elsewhere, the defendant, for the purpose of

executing the aforesaid scheme to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as more particularly described below:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 2 | April 18, 2018 | Entered false identity, social security number, and other false information on TxDMV online eLicensing application portal |
| 3 | March 18, 2019 | Transmitted or caused to be transmitted fraudulently obtained Texas buyer tags via iMessage |
| 4 | March 24, 2019 | Transmitted or caused to be transmitted fraudulently obtained Texas buyer tags via iMessage |
| 5 | April 3, 2019 | Transmitted or caused to be transmitted fraudulently obtained Texas buyer tags via iMessage |
| 6 | April 5, 2019 | Transmitted or caused to be transmitted fraudulently obtained Texas buyer tags via iMessage |
| 7 | May 15, 2019 | Transmitted or caused to be transmitted fraudulently obtained |

| | | |
|---|---|---|
| | | Texas buyer tags via iMessage |
| 8 | May 15, 2019 | Transmitted or caused to be transmitted fraudulently obtained Texas buyer tags via iMessage |
| 9 | July 8, 2019 | Entered false identity, social security number, and other false information on TxDMV online eLicensing application portal |
| 10 | September 30, 2020 | Transmitted or caused to be transmitted fraudulently obtained Texas buyer tags from Texas Motor Company via email |
| 11 | October 5, 2020 | Transmitted or caused to be transmitted fraudulently obtained Texas buyer tags from Texas Motor Company via email |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWELVE
(Aggravated Identity Theft 18 U.S.C. §§1028A and 2)

THE SCHEME AND ARTIFICE TO COMMIT IDENTITY THEFT

18. On or about the dates specified below in the Houston Division of the Southern District of Texas, and elsewhere,

**EMMANUEL PADILLA REYES A/K/A
CHRISTIAN HERNANDEZ BONILLA,
A/K/A NOEL RIVERA**

aided and abetted by each other and others known and unknown to the grand jury, to knowingly transfer, possess and use without lawful authority, a means of identification of another person, during and in relation to a felony violation of Title 18, United States Code, Section 1343 (Wire Fraud) as set out below:

| DATE | MEANS OF IDENTIFICATION | VICTIM |
|---|---|---|
| 12-14-2020 | Name and social security number | Initial "CB" |

All in violation of Title 18, United States Code, Sections 1028A and 2.

## NOTICE OF CRIMINAL FORFEITURE
28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C)

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to the defendant,

**EMMANUEL PADILLA REYES A/K/A
CHRISTIAN HERNANDEZ BONILLA,
A/K/A NOEL RIVERA**

that in the event of conviction of the offenses charged in Counts 1 through 11 of this Second Superseding Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

## Money Judgment and Substitute Assets

The United States will seek the imposition of a money judgment against each defendant. In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States may seek to forfeit any other property of the defendants in substitution.

A TRUE BILL:

Original Signature on File
_____
FOREPERSON OF THE GRAND JURY

NICHOLAS J. GANJEI
United States Attorney

By: *Belinda Beek*

Belinda Beek
Adam Goldman
Assistant United States Attorneys