IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| VS. | § | CRIMINAL NO. 4:21cr272-3 |
| | § | |
| EMMANUEL PADILLA-REYES | § | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING
AND MOTION FOR DOWNWARD DEPARTURE**

**EMMANUEL PADILLA-REYES**, Defendant, by and through undersigned counsel, respectfully files this Memorandum in Aid of Sentencing and moves this Honorable Court to impose a sentence pursuant to 18 U.S.C. § 3553(a), *Rita v. United States*, 127 S.Ct. 2456 (2007), and *United States v. Booker*, 543 U.S. 220 (2005). More specifically stated, pursuant to Title 18, United States Code, Section 371 maximum punishment of up to 5 years may be assessed and a fine of not more than $250,000. Defendant respectfully requests a sentence in accordance and a maximum term of three years of imprisonment and a maximum three year term of supervised release that requires him to refocus his efforts to a successful re-entry into society. Such a sentence is sufficient, but not greater than necessary to comply with the purposes of sentencing under 18 U.S.C. § 3553(a).

**I. INTRODUCTION**

On September 1, 2024, MR. PADILLA-REYES was arrested for conspiracy to commit wire fraud. MR. PADILLA-REYES pled guilty to count One of the second superseding criminal information. Count One charges the Defendant with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371.

On May 13th, 2025, MR. PADILLA-REYES appeared before United States Magistrate Judge Richard W. Bennett and entered a plea of guilty to count One of the second superseding information. The United States

Probation Department ("USPD") calculated Mr. PADILLA-REYES at a base offense level of 6, for his violation of Title 18, United States Code, Section 371.

Mr. Padilla-Reyes's Criminal History Category is I. Accordingly, under the United States Sentencing Guidelines, the Defendant has a sentencing range of 70 to 87 months. However, due to the statutory maximum of 60 months of imprisonment, such a sentence would be greater than necessary and thus frustrate the directives of Title 18 U.S.C. § 3553(a) thereby disregarding the relevant underlying facts and circumstances of this case. Based on the forthcoming authorities, the Defendant prays the Court for a sentence of ==36 months,== sufficient, but not greater than necessary, to achieve the purposes of sentencing.

## II. AUTHORITIES

**In Determining the Appropriate Sentence, the Court Must Consider the Factors Set Forth in 18 U.S.C. § 3553(a), Which Compels the Conclusion that a Mechanically Calculated Guideline Range is Overly Punitive and Supports a Sentence Below the Guideline Range.**

Federal courts should engage in a three-step approach to federal sentencing. First, a court must apply the sentencing guidelines to correctly calculate the guideline range. See generally *Gall v. United States*, 552 U.S. 38, 51 (2007) (stating that the District Court should begin all sentencing proceedings by correctly calculating the applicable guideline range, and that "to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). Secondly, the court should determine whether a departure is consistent with the guidelines. See, e.g., *United States v. McBride*, 434 F.3d 470, 477 (6th Cir. 2006) (holding that guideline departures are still a relevant consideration for determining the appropriate guideline sentence). Third, the court should determine whether a variance and/or downward departure (a sentence outside the advisory guideline system) is warranted under the authority of Title 18 U.S.C. § 3553(a). A sentencing court should consider arguments of the parties as to the appropriate sentence to be imposed. See, e.g., *United States v. Booker,* 543 U.S.

220 (2005), as clarified by *Gall v. United States*, 552 U.S. 38 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007). The court must look to Title 18 U.S.C. § 3553(a) and the factors enumerated in that section. After considering the advisory range, the positions of the parties, and the § 3553(a) factors, a sentencing court is to impose a sentence that is sufficient, but not greater than necessary, to achieve the purposes of sentencing. If a court imposes a sentence outside of the advisory guideline range, the court is expected to explain the departure or variance to such an extent that MR. PADILLA-REYES and any reviewing court may understand the basis for the chosen sentence. *Gall v. United States*, 552 U.S., at 46.

## United States Supreme Court's Mandate

The Supreme Court has instructed that sentencing courts "may not presume that the Guideline range is reasonable." Gall, 552 U.S. at 50 (citing *Rita v. United States*, 551 U.S. 338, 341 (2007)). Rather, a sentencing court must make an "individualized assessment based on the facts presented." Id. at 50. Above all, a court's final determination of a sentence must reflect. "Title 18 U.S.C. § 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in Title 18 U.S.C. § 3553(a)(2)," namely, retribution, deterrence, incapacitation, and rehabilitation. See *Kimbrough*, 552 U.S. at 110.

*Rita* made clear, and *Kimbrough* affirmed, that in making these individual assessments, sentencing courts are at liberty to disagree with the guidelines' recommended sentence in any particular case and may impose a different sentence based on a contrary view of what is appropriate under Title 18 U.S.C. § 3553(a). This includes the freedom to disagree with "policy decisions" of Congress or the Sentencing Commission that are contained in the guidelines. As the Supreme Court noted, "[a]s far as the law is concerned, the judge could disregard the Guidelines ...." Rita, 551 U.S. at 353. This broad discretion exists because district courts have a co-equal role with the Sentencing Commission. The courts are not inferior partners in sentencing. As the Supreme Court opined in *Rita*, "[t]he upshot is that sentencing statutes envision both the sentencing judge and the Commission

as carrying out the same basic 3553(a) objectives, the one, at retail, the other at wholesale." Id. at 347.

## Congressional Mandate of Title 18 U.S.C. 3553(a)

The mandate of Title 18 U.S.C. § 3553(a) is, of course, for the court to "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing set forth in paragraph two of that same statute. In *United States v. Hunt*, 459 F.3d 1180, 1182 (11th Cir. 2006), as well as in *Gall*, the Supreme Court summarized the factors that a sentencing court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established ...;
(5) any pertinent [Sentencing Commission] policy statement ...;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

## Determining the Appropriate Sentence Pursuant to the Supreme Court Holdings in *Gall v. United States*, 552 U.S. 38 (2007) and *Pepper v. United States*, 562 U.S. 476 (2011)

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996); *Pepper v. United States*, 562 U.S. 476, 487 (2011). "Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Pepper*, 562 U.S. at 477 (citing *Williams v. New York*, 337 U.S. 241, 247 (1949)). See also Pa. ex rel. *Sullivan v. Ashe*, 302 U.S. 51, 55 (1937) ("For the determination of sentence, justice generally requires consideration of more than the particular acts by which the

crime was committed and that there be taken into account the circumstances of the offense together with the character and the propensities of the offender.").

The post-*Booker* opinion makes clear that, although a sentencing court must "give respectful consideration to the Guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well." Kimbrough, 552 U.S. at 101; see also Pepper, 562 U.S. at 490. Thus, the Guidelines are not the only consideration.

Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, the Court may not presume the Guidelines are reasonable. *Rita*, 551 U.S. at 351.

### III. ARGUMENT

### The Court Must Consider the History and Characteristics
### of the Defendant as Set Forth in 18 U.S.C. § 3553(a)

In *United States v. Booker*, the Supreme Court held the sentencing guidelines are advisory. 543 U.S. 220, 245-46 (2005). Thus, the sentencing court must consider the guideline range, while tailoring the sentence in consideration of other statutory concerns as set out in § 3553(a). A sentence should not only fit the offense, but the offender as well. See *Miller v. Alabama*, 567 U.S. 460, 469 (2012); *Pepper v. United States*, 562 U.S. 476, 487-88 (2011). Therefore, it is imperative that sentencing courts carefully consider the factors in § 3553(a) when determining a sentence sufficient but not greater than necessary to achieve the goals set forth. Since Congress, the Supreme Court, and the United States Sentencing Commission found that following the sentencing guidelines without discretion is not the best avenue to sentence a defendant, we cannot put all our stock in the guidelines. To do so would be primitive and unyielding. We must seriously look at the factors listed in Title 18 §3553 and with a compassionate view, determine the appropriate sentence. Every Defendant has a story; I

challenge the Court to temper the charged offense with Mr. Padilla-Reyes's story.

### History and Characteristics of JAMES A. BROCKLEHURST

*"Divorce is an expensive punishment love gets when it fails"- Bangambiki Habyarimana* James was born into the tumultuous union of Daniel Brocklehurst and Rita McCallum. By the age of six James's parents were divorced; this marked the beginning of a troublesome path for James's family, especially for his mother. By all accounts, James's mother, Rita McCallum, was a degenerated alcoholic. James's mother was ill-equipped to raise James due to her battle with alcoholism and depression.

After James's parents divorced James resided with his mother for the next several years. Unquestionably, these years of James's life were marred by being outcasted, overlooked, abandoned, untreated, unwanted, and simply neglected. At the age of 12, James would move to Orange, Texas, to live with his father. However, the six years James spent under his mother's care were detrimental to his behavioral, educational, and emotional development. James only completed the 8th grade; he dropped out of high school during his freshman year. James's school records highlight failing grades, disciplinary demerits, and nonattendance. See PSR 57. The above quote, "*Divorce is an expensive punishment love gets when it fails.*" from Habyarimana is not limited to monetary ramifications for spouses. Likewise, divorce can be an expensive punishment to a child's welfare, particularly when parents demonstrate criminal tendencies and have substance abuse issues.

Undoubtedly, the major hurdle in Mr. Brocklehurst's case is his criminal history. However, Mr. Brocklehurst's age at the time he committed his previous crimes is a material factor when considering his criminal history. The majority of Mr. Brocklehurst's criminal history occurred when he was a young man of great impression. In fact, all of Mr. Brocklehurst's criminal history occurred when he was 23 years of age or younger.

In a recent *2015* article entitled, *The Effects of Parental Divorce on the Intergenerational Transmission of*

*Crime,* researchers' studies showed a nexus between parental divorce and children offending.[1] Here, the researchers tested whether parental divorce moderates the intergenerational transmission of crime. The results show parental divorce increases children's non-violent offending. Furthermore, the study suggested a possible explanation for non-violent offending, arguing that non-violent offending may be linked to the economic hardships children experience after their parents' divorce.

The abovementioned results are insightful to understanding the pathways to juvenile delinquency. If a child's family nucleus is disrupted by divorce, coupled with a parent exhibiting some form of criminality and

---

[1] Exhibit A. *The Effects of Parental Divorce on the Intergenerational Transmission of Crime* by Steve G.A. van de Weijer, Terence P. Thornberry, Catrien C.J.H. Bijleveld and Arjan A.J. Blokland

economic hardship, a child has an increased chance of offending. Therefore, the conditions surrounding a divorce may be predictive factors of future offending behaviors in children.

Contemplating James's age when his parents divorced and his juvenile record, we would be remiss not to perform a closer examination of James's childhood. Per the PSR ¶ 42, James, while a minor, was referred on six occasions to Orange County Texas, Juvenile Probation Department between 1991-1995. Conversely, James began experimenting with alcohol and drugs at the ages of 13 and 15, respectively. *See* PSR ¶ 54. Therefore, James's

alcohol use began in 1990, one year prior to encountering the justice system. Undoubtedly, James's underage drinking and illicit drug use were precursors and gateways to his juvenile delinquency. Numerous studies underscore the significant impacts of underage drinking. In 2012, the Office of Juvenile Justice and Delinquency Prevention highlighted the consequences of underage drinking, citing: health problems, social difficulties, dropping out of school, and encounters with law enforcement.[2]

Furthermore, the publication emphasized that parents can influence a youth's propensity to start drinking. Children are more likely to drink alcohol when at least one of their parents has a history of alcoholism. James

fell squarely within this paradigm.

James's mother could not help rear James in the right direction because she was wrestling with her own issues - alcoholism and depression. These breaches in parental guidance in James's childhood were not without consequences. They were the impetuses behind James feeling the need to "self-medicate" with alcohol and marijuana. As a teenager, James's addiction graduated to include marijuana, psychedelics, and codeine. [PSR 54]. Ultimately, James's dad took James in when his mom became overwhelmingly neglectful.

Despite limited resources, James's father did his best to provide the bare necessities for James. However, James's never received adequate care or treatment to support the deficiencies, which developed from the years of

---

[2] See Exhibit B. *Effects and Consequences of Underage Drinking,* **U.S. Department of Justice** *Office of Juvenile Justice and Delinquency Prevention 2012*

neglect from his mother. James's father was working and trying to maintain his new family, which included two stepchildren. As a result, James went unsupervised and was often neglected yet again. He was a defacto "*latchkey kid.*" Due to a lack of parental supervision, young James spent much time alone or with the local teenagers in Orange, Texas. Through those teenagers, James learned to sell and experiment with drugs in his parents' absence. His environment was ripe for this type of behavior. Violence and drugs riddled the dangerous neighborhood where James grew up.

*"The chance of becoming a victim of either violent or property crime in Orange is 1 in 43. Based on FBI crime data, Orange is not one of the safest communities in America. Relative to Texas, Orange has a crime rate that is higher than 76% of the state's cities and towns of all sizes."* [3]

James had a difficult time adjusting to his new living environment. James was left to explore the streets without proper parental supervision, where he found himself hanging with the wrong crowd. Consequently, James had to grow up fast. When James entered West Orange-Stark High School, he wanted to graduate, but he had difficulty navigating his interpersonal conflicts. See PSR ¶¶ 57 Remarkably, James continued studying

although he was no longer enrolled school. In 1995, James tested and received his high school equivalence degree (GED). The latter is a testament to James's resilience and desire to be a productive member of society. James managed to curtail his addiction enough to obtain his GED in the face of seemingly insurmountable odds.

Without guidance, James made several poor decisions. It follows, James's life became unhinged as he grappled within himself to shake his addiction, feelings of neglect and depression all while trying to survive in his neighborhood. Nonetheless, James's battles with addiction has undergone many ebbs and flows. One source of uplift for James has been his family, particularity being able to establish meaningful relationships with his nieces and nephews. James does not have any biological children, but he has been an indispensable part of his nieces and nephews' lives.[4] As they become older it was very important to maintain and strengthen his family bonds.

---

[3] Data available at https://www.neighborhoodscout.com/tx/orange/crime#description ORANGE, TX CRIME ANALYTICS [4] See Exhibit C. Mr. Brocklehurst's Family Photos.

We ask the Court not to view James's life in a vacuum. James's upbringing not only hampered him, but the hardships of addiction have befallen both of James's siblings as well. *See* [PSR 49]. Yet, experience inherently comes with age; thus, James's siblings transformed their lives over time. Likewise, we are optimistic that James's denouement will be as redemptive as his siblings if given a downward departure.

### Additional Grounds for Downward Departure

The Sentencing Guidelines "place essentially no limit on the number of potential factors that may warrant a departure." **Koon v. United States**, 518 U.S. 81, 106 (1996); **United States v. Coleman**, 188 F.3d 354, 358 (6th Cir. 1999) (en banc). There are a "potentially infinite number of factors which may warrant a departure." 18 U.S.C. § 3661 The court has also reasoned "no limitations shall be placed on the information" a court can receive and consider for purposes of imposing an appropriate sentence." A departure is warranted if the case is "unusual

enough for it to fall outside heartland of cases in the guidelines." ***Koon***, 518 U.S. at 92. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishments to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge." ***Koon***, 518 U.S. at 112223.

The Guidelines "do not displace the traditional role of the district court in bringing compassion and common sense to the sentencing process. In areas where the Sentencing Commission has not spoken ... district courts should not hesitate to use their discretion in devising sentences that provide individualized justice." **United States v. Williams**, 65 F.3d 301, 309-310 (2d Cir. 1995); see also, 18 U.S.C. § 3553(a)(the court "shall impose a sentence sufficient, ***but not greater than necessary***, to comply with [the purpose of sentencing]." (Emphasis supplied). "It is important, to realize that departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some respects, the rigidity of the Guidelines themselves. District judges, therefore, need not shrink from utilizing departures when the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence." **United States v. Gaskill**, 991 F.2d 82, 86 (3d Cir. 1993). "The Guidelines are not a straitjacket for district judges." **United States v. Cook**, 938 F.2d 149, 153 (9th Cir. 1991). The Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." **United States v. Dominguez,** 296 F.3d 192, 200 n. 7 (3d Cir. 2002) (quoting **United States v. Johnson**, 964 F.2d 124, 125 (2d Cir. 1992)). "To impose the harsh sentence suggested by Probation and the government under the Guidelines without appropriate downward departures would amount to an act of needless cruelty given the nature of the crimes committed and the personal circumstances of these defendants." **United States v. Blarek II**, 7 F.Supp.2d 191, 202 (E.D.N.Y. 1998).

In Mr. Padilla-Reyes's case, there exists extraordinary circumstances that warrant an additional departure consideration. Mr. Padilla-Reyes has been in custody —-- and has been a model inmate for over a year. Namely,

Mr. Brocklehurst's excessive time under quarantine, due to the pandemic, where he was not permitted to leave his cell in addition to not being able to have visits with loved ones. These positive and loving interactions are necessary to the emotional and mental success of inmates. This was in addition to the already strict procedures in place at the federal detention center. During the pandemic, inmates within Texas Federal Detention Centers faced unprecedented restrictions as well as the extended periods of limited to no involvement with family members surely constituted hard time. We ask the Court to give special consideration to Mr. Brocklehurst's age. As it stands, he is nearly 44 years old, and with age comes a reduction in recidivism. Thus, Mr. Brocklehurst is more likely to keep his promise of being a reformed man. He is, in short, trying to change the ending to his story, which is possible by Mr. Brocklehurst's unbridled determination coupled with the support of family and friends.[9]

In determining sentencing, the "guidelines do not require a judge to leave compassion and common sense at the door to the courtroom." **United States v. Johnson,** 964 F.2d 124, 125 (2d Cir. 1992). Indeed, "[i]t has been uniformed and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate ... the crime and the punishment to ensue.," **United States v. Threadgill,** 172 F.3d 37, 378 (5th Cir. 1999).

Sentencing with compassion is a hallmark of a civilized society. Mr. Brocklehurst humbly requests this Honorable Court's independent discretion under the facts and circumstances of this case to grant a downward departure for the foregoing reasons. The Defendant requests this Honorable Court to impose a sentence of 36 months of imprisonment.

### IV. CONCLUSION

**WHEREFORE PREMISES CONSIDERED**, and for all the foregoing reasons, MR. PADILLA-REYES respectfully requests that this Court exercise its discretion to depart downward from the sentencing guidelines and assess a sentence at a term of imprisonment that is sufficient but not

greater than necessary. A sentence that this Honorable Court, in its independent discretion, deems just, which would adequately vindicate the United States in accord with the judgment of the Court, and that the best interests of MR. PADILLA-REYES, his family, friends, and society be served.

Respectfully submitted,

*/s/George L. Powell*
George L. Powell
Attorney for Defendant
State Bar No. 24034632
1602 Washington Avenue
Houston, Texas 77007
Ph: (281) 785-8850
Fax: (713) 714-8670

**Attorney for EMMANUEL PADILLA-REYES**

# CERTIFICATE OF DELIVERY

I hereby certify that a true and correct copy of the above and foregoing has been this day delivered to the Assistant U.S. Attorney, Belinda A. Beek, by email at Belinda.Beek@usdoj.gov

*/s/ George L. Powell*
George L. Powell
Attorney for Defendant